IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HELEN C.,[1]                                              No. 6:25-cv-00103-HZ

                  Plaintiff,                        OPINION & ORDER

     v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                Defendant.

Kevin Kerr
Kerr Robichaux & Carroll
P.O. Box 14490
Portland, OR 97293

      Attorney for Plaintiff

Kevin Danielson
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Michael J. Mullen
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
6401 Security Boulevard
Baltimore, MD 21235

      Attorneys for Defendant

HERNÁNDEZ, Senior District Judge:

Plaintiff Helen C. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court affirms the Commissioner's decision.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB and SSI on September 8, 2021, alleging an onset date of July 2, 2021. Tr. 68.[2] Plaintiff's date last insured ("DLI") is December 31, 2025. Tr. 68. Her application was denied initially and on reconsideration. Tr. 91, 102.

On October 24, 2023, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 32. On January 31, 2024, the ALJ found Plaintiff not disabled. Tr. 26.  The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on lower back pain, elbow pain, smoke inhalation, sleep issues, a shoulder injury from 2008, and neck issues. Tr. 219. At the time of her alleged onset date, she was 49 years old. Tr. 24. She has a high school education and past relevant work experience as a "caregiver/home attendant." Tr. 24.

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 8.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work."  20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the

3 – OPINION & ORDER

Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after her alleged onset date. Tr. 18. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairment: "degenerative disc disease of the cervical and lumbar spine." Tr. 18. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 19. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations:

> [T]he claimant cannot climb ladders, ropes, or scaffolds and can occasionally climb ramps and stairs. The claimant can occasionally stoop, kneel, crouch, and crawl, and can occasionally reach overhead.

Tr. 19. Because of these limitations, the ALJ concluded that Plaintiff could not perform her past relevant work. Tr. 24. But at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as school bus monitor, bakery worker, child attendant, usher, and boat rental clerk. Tr. 25. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 26.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence

in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

## DISCUSSION

Plaintiff argues the ALJ erred in discounting her subjective symptom testimony. Pl. Br. 7, ECF No. 9. The Court disagrees.[3]

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom evaluation. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (superseded on other grounds). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other

---

[3] Plaintiff also argued that the ALJ erred in: (1) failing to find her migraine headaches a severe impairment at step 2; (2) failing to evaluate whether Plaintiff's migraines equal a listed impairment at step 3; and (3) finding Plaintiff capable of light work at step five. But all three arguments are based on limitations established by Plaintiff's subjective statements as to her migraines, her back pain, and associated limitations. As the ALJ properly discounted Plaintiff's testimony, the Court declines to reach these remaining arguments.

symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id.* (internal quotations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

Plaintiff primarily suffers from back and neck pain. Plaintiff has a constant dull ache in her low back, and her neck muscles are tight, causing migraines or bad headaches. Tr. 38. Her low back is weak, and she needs support to get up and down. Tr. 38. Because of her neck pain, it is difficult to lift her arms up and wash her hair, reach behind her, or lift anything heavier than a gallon of milk with one hand. Tr. 38-39, 43, 44. Two years prior to the hearing, Plaintiff also began experiencing a few migraines a week. Tr. 45-46. Plaintiff testified she can only stand in one spot for 15-20 minutes and sit for 30-45 minutes with a cushion. Tr. 39-40. She has to lay down for 20-30 minutes at least three times a day. Tr. 40. She is limited in her ability to lift, squat, bend, kneel, and climb stairs. Tr. 241. She wears a back brace every day. Tr. 40. Plaintiff

6 – OPINION & ORDER

cannot do as much as she used to due to her pain. Tr. 236. She is constantly fatigued, and if she pushes herself she is "not any good for the next couple days." Tr. 236. She testified that she is exhausted around 2 or 3 PM every day and will take a thirty-minute nap to get through the day. Tr. 43.

Plaintiff testified that acupuncture offers her relief for a short time, and that tramadol relieves her back pain without many side effects. Tr. 41-42. Physical therapy also helps. Tr. 41. Plaintiff tried an injection in her back, but it made her pain worse. Tr. 41. Plaintiff takes medication 2-3 times a week when she gets a migraine, which usually stops her headache after 20-30 minutes. Tr. 46.

Plaintiff's typical day begins with feeding her horse and cows in four different places. Tr. 237. She also checks on her mom and helps her out if needed. Tr. 237. Plaintiff can cook for a couple of hours, clean her house, do dishes, laundry, bake, vacuum, ride the lawnmower, and do yardwork. Tr. 50, 237-38. Plaintiff can also use a small chainsaw for shorter periods of time to trim lower tree branches. Tr. 50-51. Plaintiff explained that she can only do these activities for half an hour at a time and then needs to rest. Tr. 238. She also testified that she does not clean as much as she should because she cannot stand long enough to do dishes or vacuum. Tr. 50. Feeding her livestock can take three hours to break down hay bales, and she needs help from her friends to lift and throw hay. Tr. 237-38.  Plaintiff's hobbies include woodworking and softball. Tr. 240. But she can only use small pieces of wood that have been cut down for her. Tr. 51, 240. And at the time of the hearing, Plaintiff testified she stopped playing softball altogether in 2023 because it was too much for her. Tr. 49. By 2022 and 2021, she was only playing when the team was shorthanded, and she used a designated runner. Tr. 49.

7 – OPINION & ORDER

The ALJ gave three reasons for discounting Plaintiff's testimony: (1) Plaintiff's activities of daily living; (2) Plaintiff's course of treatment; and (3) lack of support from the objective medical evidence.

## I.     Activities of Daily Living

Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). There are two grounds for using daily activities to form the basis of an adverse credibility determination: (1) when activities meet the threshold for transferable work skills and (2) when activities contradict a claimant's other testimony. *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). However, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," *Reddick*, 157 F.3d at 722, and "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking or exercise does not in any way detract from [their] credibility," *Webb v. Banhart,* 433 F.3d 693, 688 (9th Cir. 2005) (citing *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001)). In order to impact a claimant's credibility, the activity has to be "inconsistent with claimant's claimed limitations." *Reddick,* 157 F.3d at 722. The ALJ cannot mischaracterize statements and documents in the record or take these out of context in order to reach his conclusion on the claimant's credibility. *Id.* at 722–23

The ALJ found that Plaintiff's "activities during the period at issue [are] not consistent with [Plaintiff's] characterization of the limiting effects of her impairments or her attorney's assertion that she is limited to sedentary work." Tr. 21. In so finding, the ALJ highlighted Plaintiff's testimony and reports to providers that she was able to play softball; engage in hobbies such as woodworking; and undertake significant yard and farmwork. Tr. 20-23.

8 – OPINION & ORDER

The ALJ's decision is supported by substantial evidence in the record. Though Plaintiff testified that she had significant mobility limitations—including limitations in her ability to lift, bend, kneel, stand for longer than 20 minutes, and sit for longer than 45 minutes—she also reported significant activities of daily living. For example, Plaintiff reported moving hay bales and feeding livestock for hours every day. Tr. 237-38. Through 2023, she told providers that she was riding tractors, using weed eaters and chainsaws, backing up trailers, and dealing with field irrigation. Tr. 528, 620, 650, 653, 677. She often reported minimal pain despite these activities. *See, e.g.*, Tr. 620 (using chainsaw and weed eater with only "mild tension" in neck and shoulders), 525 (reporting minimal pain despite being very active). She also testified that she was playing softball during the relevant period and that she was still woodworking, albeit with smaller pieces of wood. Tr. 240-41, 50-51. In light of the inconsistency between Plaintiff's alleged limitations and her activities of daily living, ALJ did not err in discounting Plaintiff's testimony.

## II.    Course of Treatment

The ALJ may rely on evidence of effective treatment in assessing Plaintiff's testimony. *See Orteza*, 50 F.3d at 750 ("Factors that the adjudicator may consider when making such credibility determinations include the . . . effectiveness or adverse side effects of any pain medication."); *Tommasetti*, 533 F.3d at 1040 (finding claimant's testimony undermined by the fact he responded well to conservative treatment). The Ninth Circuit has also "long held that, in assessing a claimant's credibility, the ALJ may properly rely on 'unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment.'" *Molina*, 674 F.3d at 1113 (quoting *Tomasetti*, 533 F.3d at 1039).

9 – OPINION & ORDER

In his decision, the ALJ noted both that Plaintiff's treatments have been successful in managing her pain with few reported side effects and that Plaintiff declined to seek additional treatment for her migraine headaches. Specifically, the ALJ noted Plaintiff's reports to providers that her back pain was well-controlled with tramadol and acupuncture, and that Plaintiff's migraine medication provided relief within 30-60 minutes. Tr. 22-23. The ALJ also noted that Plaintiff declined to try prescription medications to prevent Plaintiff's migraines. Tr. 24.

Again, the ALJ's decision is supported by substantial evidence in the record. Plaintiff repeatedly reported to providers—and testified that—her back pain was effectively treated with tramadol and acupuncture. Tr. 41 (testifying that acupuncture and tramadol provided pain relief), 334, 404 (reporting to medical providers that her low back pain was well-managed with tramadol), 623, 632 (reporting temporary improvement with acupuncture). While tramadol did not treat Plaintiff's headaches, Plaintiff reported pain relief after 30 minutes with sumatriptan, an abortive migraine medication. Tr. 537, 46. And when her neurologist suggested trying prescription medications to prevent migraines, Plaintiff declined and was "quite reluctant" to try them. Tr. 541, 686. In sum, the record shows that Plaintiff's pain was generally manageable with medications and that Plaintiff was reluctant to try additional prescriptions that may have offered preventative relief. Accordingly, the ALJ did not err in finding Plaintiff's testimony undermined by her course of treatment.

### III.   Objective Medical Evidence

The ALJ is instructed to consider objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms . . . ."). Inconsistency between Plaintiff's testimony and the objective medical

record is a valid reason to discount Plaintiff's testimony. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding where the plaintiff's testimony of weight fluctuation was inconsistent with the medical record). And under certain circumstances, the ALJ can discount claimant testimony when that testimony is not supported by the objective medical record. *See Batson v. Comm'r,* 359 F.3d 1190, 1196 (9th Cir. 2007) ("'Graphic and expansive'" pain symptoms could not be explained on objective, physical basis by claimant's treating physician); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (finding the ALJ could consider mild findings on MRIs and X-rays in discounting the plaintiff's testimony as to her back pain). However, this may not be the ALJ's sole reason for discounting a claimant's testimony: "[T]he Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick,* 157 F.3d at 722.

The ALJ discussed the treatment record at length, noting normal imaging and exams, reports of low-level pain, and inconsistencies between Plaintiff's testimony and the record. For example, the ALJ cited imaging that showed no explanation for Plaintiff's pain. Tr. 22. The ALJ also emphasized that Plaintiff reported taking no naps during the day. Tr. 21.

The record does not support Plaintiff's testimony. First, the objective evidence does not support Plaintiff's reports of disabling pain. As the ALJ noted, a neurosurgeon concluded that there he did not have a good explanation for Plaintiff's pain based on her imaging. Tr. 449 (noting unremarkable imaging and concluding "I do not have a good explanation for this woman's pain"). Plaintiff also regularly reported only "manageable" or low levels of pain—a 2 or 3 out of 10—to providers. *See, e.g.*, Tr. 519, 525, 632, 553. And contrary to Plaintiff's testimony that she tried to take naps daily, Tr. 43, she reported no naps in a sleep log from late

11 – OPINION & ORDER

2020 and told a doctor in 2023 that she only took naps if she "stopped long enough." Tr. 304, 677.  In light of the record as a whole, including Plaintiff's activities of daily living, her course of treatment, and the objective medical evidence, the Court finds the ALJ did not err in discounting Plaintiff's testimony.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED:_____June 5, 2026_____.

_____
MARCO A. HERNÁNDEZ
United States Senior District Judge

12 – OPINION & ORDER